# United States Court of Appeals
## For the First Circuit

No. 09-1503

HÉCTOR LUIS ROMÁN-OLIVERAS, et al.,

Plaintiffs, Appellants,

v.

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA),
JAMES VÉLEZ, JULIO RENTA, et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before
Lipez, Circuit Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

Juan R. Rodriguez, with whom Rodriguez Lopez Law Office,
P.S.C. was on brief, for appellant.
Marie L. Cortés-Cortés for appellee PREPA.
Rosa Elena Pérez-Agosto, with whom Irene S. Soroeta-Kodesh,
Solicitor General, Leticia M. Casalduc-Rabell, Deputy Solicitor
General, Zaira Z. Girón-Anadón, Deputy Solicitor General, and Rosa
Elena Pérez-Agosto, Assistant Solicitor General, were on brief, for
appellees Vélez and Renta.

August 18, 2011

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**LIPEZ**, **Circuit Judge**.    Appellant Héctor Luis Román-Oliveras ("Román") claims that he was an exemplary employee at the Puerto Rico Electric Power Authority ("the Authority" or "PREPA") for more than two decades despite suffering from schizophrenia throughout the period of his employment.  In this action against the Authority and two PREPA supervisors, he alleges that he was inexplicably removed from his job in 2006, required to undergo multiple medical evaluations, and prevented from resuming his duties even though each evaluation pronounced him fit to work. Román brought this action against the Authority and two PREPA supervisors under federal and Commonwealth law, alleging violation of his civil rights and unlawful discrimination on the basis of his medical condition.[1]  The district court dismissed Román's complaint in its entirety.  It discerned no basis for relief under federal law and, accordingly, declined to address the supplemental Commonwealth claims.

Although we affirm the district court's rulings on most of Román's claims, we vacate the dismissal of his claim against his employer under the Americans with Disabilities Act ("ADA") because the complaint plausibly depicts discrimination based on the perception that Román is disabled.  On an issue of first impression

---

[1]  Also listed as defendants were unnamed "responsible" parties, including the named defendants' insurers.  The complaint identified Román's wife, the couple's conjugal partnership, and Román's mother as co-plaintiffs.  For convenience, we refer in our analysis only to Román and the PREPA defendants.

for our circuit, we conclude that Title I of the ADA does not provide for liability against individuals who are not themselves employers.[2]

**I.**

We recite the facts in the manner appropriate for reviewing a dismissal under Federal Rule of Civil Procedure 12(b): "[W]e 'assume the truth of all well-pleaded facts' in the complaint," and draw all reasonable inferences in the plaintiff's favor. Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 13 (1st Cir. 2009) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005)).[3]

Before the events at issue in this litigation, Román had worked successfully for PREPA for twenty-two years while receiving regular psychiatric treatment for schizophrenia. The condition had been diagnosed more than thirty years earlier. Román received excellent evaluations and was always available for overtime work. Beginning in 2005, Román's immediate superior, defendant James

---

[2] Because reactivation of the ADA claim opens the door to reinstatement of the supplemental Commonwealth claims, we also vacate the portion of the court's judgment dismissing those claims. See Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).

[3] The district court relied on both Rule 12(b)(1) and Rule 12(b)(6) in dismissing appellant's various claims. The same standard applies to both subsections. See McCloskey v. Mueller, 446 F.3d 262, 265-66 (1st Cir. 2006).

-3-

Vélez, and the plant superintendent, defendant Julio Renta,[4] made Román's life difficult in retaliation for his union activities and role as a "leader of workm[e]n." Román's complaint states that the PREPA supervisors harassed him, "making improper rude comments against him, taking adverse person[ne]l action and fabricating labor cases against him." The complaint accuses the defendants of attempting on one occasion to transfer Román "without the benefit of paying him [food] and car allowance" and of treating him "differently from similarly situated individuals outside of his protected group." The complaint further alleges that Vélez and Renta used false information and "their official positions improperly as employees and engineers of co-defendant PREPA" to cause harm to Román.

On March 1, 2006, PREPA's social worker asked the Authority's physician to bar Román from working until he was evaluated by a psychiatrist, and PREPA thereafter did not allow him to work. On April 24, the social worker received the psychiatric report, which stated that Román could resume his duties. On May 23, PREPA "formally acknowledge[d]" the psychiatrist's report and recommendation. Román, however, remained out of work, involuntarily, despite the satisfactory report. On August 7, PREPA's physician ordered "asbestos[] medical evaluations" of

_____

[4] The individual appellees identify "Renta" as "Rentas-Pujols" in their brief. We use the name that appears in the court docket.

Román.  The resulting report stated that Román was "fit for duties including as per his psychiatric condition."

Although PREPA's physicians recommended on October 17 that Román return to work, and he repeatedly asked to return, defendant Renta requested additional medical evaluations on November 13 and referred Román for an involuntary medical leave. Román also was asked for the evaluations of his private doctors. In January 2007, he submitted the requested medical certification from his psychiatrist.  Despite findings by "[a]ll of the doctors" that Román was capable of resuming his work, defendants again refused to allow him to do so, "changing the entire process of the reinstallation of plaintff[']s duties."

Román was taken off PREPA's payroll in February 2007. Although he alleges that he was terminated, he submitted an employment certification in Spanish to the district court that, according to the court, "reflects that Román had been on medical leave, without pay, since February 10, 2007."  The defendants presented a translated employment certification stating that, as of September 5, 2007, Román remained a PREPA employee "hold[ing] the regular position of Central Power Plant Electrician II."  The complaint alleges, however, that Renta and Vélez ordered removal of Román's personal items from the work area, removal of his name from his locker, and reassignment of his toolbox to another employee.

Román filed a timely complaint with the Equal Employment Opportunity Commission and subsequently filed this action, alleging violations of the ADA, 42 U.S.C. §§ 12101-12213;[5] Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the civil rights provision codified at 42 U.S.C. § 1983; and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142. He alleged that defendants' actions violated his civil rights, created a hostile work environment, and subjected him to "adverse actions because of his medical condition and active participation with the Union."

Defendants moved for dismissal and, after an exchange of updated pleadings, the district court dismissed with prejudice each of the federal claims in plaintiff's Second Amended Complaint. The court concluded that the hostile work environment claim was time-barred, that Román failed to allege facts showing that he was disabled within the meaning of the ADA, and that he had alleged "neither . . . a specific violation of federal law nor any independent facts" to support his section 1983 claim. Given the deficiencies in the federal causes of action, the court declined to exercise supplemental jurisdiction over the associated Commonwealth claims and dismissed them without prejudice.

---

[5] The complaint did not specify the title of the ADA under which suit was brought, but the district court accepted the Title I characterization adopted in plaintiff's opposition to defendants' motion to dismiss. We do likewise.

On appeal, appellant continues to press his ADA and section 1983 claims, but implicitly in his brief and explicitly at oral argument conceded the inadequacy of the complaint's Title VII allegations. We therefore limit our discussion to the disability and civil rights claims.[6] Our review is de novo. See Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010) (applying de novo review to claims dismissed under subsections (1) and (6) of Federal Rule of Civil Procedure 12(b)).

**II.**

**A. Section 1983**

Section 1983 does not provide "any substantive rights independent of those already granted under federal law," Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008), and a plaintiff seeking to recover under that provision must therefore "identify the specific constitutional [or statutory] right allegedly infringed," Albright v. Oliver, 510 U.S. 266, 271 (1994); see also Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). Appellant's complaint lacks any such specificity. Although the complaint alleges that he was treated differently from "similarly situated individuals

---

[6] It is not clear from the complaint whether appellant's hostile environment claim is disability-based or linked to his union and other leadership activities. Its precise nature does not in any event matter because appellant's brief does not address the court's rejection of that claim and, accordingly, we deem it waived. See Sepúlveda-Villarini, 628 F.3d at 28. Hence, in our discussion of the ADA, we consider only the claim that Román was unlawfully removed from his job on account of his disability.

outside of his protected group" – language evocative of an equal protection claim – he has never asserted a violation of the Equal Protection Clause of the Constitution.[7]

Nor does the complaint use the term "due process," which Román now argues is the right underlying his section 1983 claim. He maintains that the paragraphs in the complaint describing PREPA's repeated refusal to reinstate him were sufficient to frame a procedural due process violation because, in the words of the complaint, the defendants "chang[ed] the entire process of the reinstallation of plaintiff[']s duties."

The allegations concerning the "process" of his reinstatement, however, establish the factual basis for his disability discrimination claim, i.e., that he was repeatedly forced to undergo medical evaluations and prevented from working despite reports showing that his schizophrenia did not affect his capacity to work. See infra Part II.B. Without more, those allegations do not also signal a due process claim. Such a claim requires a showing that the plaintiff was deprived of a protected liberty or property interest without "adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Aponte-Rosario v. Acevedo-Vilá, 617 F.3d 1, 9 (1st Cir.

_____

[7] The district court noted that appellant's perfunctory allegation that he experienced adverse treatment because of his "active participation with the Union" may suggest a constitutional claim, but any such cause of action was too insufficiently developed to warrant consideration. We agree.

2010) (quoting <u>Amsden</u> v. <u>Moran</u>, 904 F.2d 748, 753 (1st Cir. 1990)). Appellant's complaint does not identify a protectible interest, and it says nothing about either lack of notice or the absence of a meaningful opportunity to be heard.[8]

In effect, appellant asks that his section 1983 cause of action be saved because the allegation of faulty procedures <u>could</u> have supported a second, constitutional theory of recovery. The due process theory was not articulated in the complaint, however, and appellant thus failed with regard to this claim to comply with the requirement of Federal Rule of Civil Procedure 8(a)(2) that "every complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Ocasio-Hernández</u> v. <u>Fortuño-Burset</u>, 640 F.3d 1, 5 (1st Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)); <u>id.</u> (explaining that the Rule "requires sufficient detail in the complaint to give a defendant fair notice of the claim and the grounds upon which it rests"). We therefore affirm dismissal of the section 1983 claim.

---

[8] At oral argument, appellant's counsel asserted that Román has a property interest in his job because he is a public employee. Although Román alleged that PREPA is "a public corporation and government agency," government employment does not always confer a property interest and related procedural due process rights. <u>See</u> <u>Concepción Chaparro</u> v. <u>Ruiz-Hernández</u>, 607 F.3d 261, 264 (1st Cir. 2010) ("In order for plaintiffs to have procedural due process rights in their employment, each plaintiff must have had a reasonable expectation, based on a statute, policy, rule, or contract, that he or she would continue to be employed."). In keeping with his failure to allege other elements of a due process claim, Román did not allege a basis for a property interest in his position.

**B. ADA**

To state a claim of disability discrimination under Title I of the ADA, Román needed to allege facts showing that (1) he was disabled within the meaning of the Act; (2) he could perform the essential functions of his job, with or without reasonable accommodation, and (3) the employer took adverse action against him, in whole or in part, because of his disability. Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir. 2008); Bailey v. Ga.-Pac. Corp., 306 F.3d 1162, 1166 (1st Cir. 2002). An individual is disabled for purposes of the ADA if he (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. Ruiz Rivera, 521 F.3d at 82; see also 42 U.S.C. § 12102(2) (2008).[9]

The district court concluded that Román had failed to allege facts sufficient to establish that he was disabled under any of the statute's three definitions. We agree that the complaint falls short on the first two alternatives. As to the first option, the district court correctly noted that Román did not allege that schizophrenia substantially limited any aspect of his life,

---

[9] The ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(a)(4)-(6), 122 Stat. 3553, which took effect January 1, 2009, does not apply here, as the Act does not retroactively cover activities that occurred before its passage. See Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 33 n.7 (1st Cir. 2010). We therefore rely on the pre-amendment statutory provisions and the case law interpreting those provisions.

including his ability to work.  Indeed, the thrust of appellant's complaint is that he was fully capable of working, but was unfairly denied the opportunity to do so "because of his medical condition." He thus has not stated a claim of disability discrimination based on the condition of schizophrenia itself.

For a similar reason, the district court correctly found that Román's complaint failed to satisfy the "record of impairment" prong of the disability definition.  The "record" provision is designed "to protect those who have recovered or are recovering from substantially limiting impairments from discrimination based on their medical history."  Bailey, 306 F.3d at 1169.  Thus, to qualify for ADA coverage on the basis of this provision, Román would need to show that in the past he had, "or has been misclassified as having, an impairment that substantially limited a major life activity."  Id.  Again, because Román has not alleged substantial limitations as a result of schizophrenia, he failed to state an ADA claim based on having a record of impairment.

Finally, the district court rejected appellant's "regarded as" claim on the ground that he had "failed to allege facts sufficient to show that defendants ever regarded Román's schizophrenia as having a substantial impact on his work."  To prove a regarded as claim against his employer, a plaintiff ordinarily must show either that the employer (1) "mistakenly believes that [he] has a physical impairment that substantially

-11-

limits one or more major life activities," or (2) "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999), superseded by statute, ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(a)(4)-(6), 122 Stat. 3553; see also Ruiz Rivera, 521 F.3d at 83; Sullivan v. Neiman Marcus Grp., Inc., 358 F.3d 110, 117 (1st Cir. 2004). We focus on the second of these alternatives.[10]

To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). According to the allegations in the complaint, Román was removed from his position and forced to undergo multiple medical evaluations at the behest of the defendants, and also was required to submit a medical certification from his treating psychiatrist. Despite favorable test results each time, defendants persisted in refusing to allow Román to work.

---

[10] Appellees assert that Román failed to argue in his brief on appeal that he was disabled under the "regarded as" prong and has thus waived that issue. Although Román's entire brief is barely adequate, we do not consider the claim waived. In addition, we see no prejudice in reaching the issue; the district court addressed it on the merits, as did appellees in their appellate briefing.

Taken as true, these allegations, together with the allegation that Román always performed his job well, readily support three pertinent inferences: (1) defendants mistakenly believed that Román's psychiatric condition substantially limited his ability to do his job; (2) they refused to let him work based on that erroneous, discriminatory judgment; and (3) they repeatedly attempted to justify removing him from his job through the psychiatric and other medical testing. To state a violation of the ADA when the major life activity at issue is working, however, Román must show "'not only that the employer thought that he was impaired in his ability to do the job that he held, but also that the employer regarded him as substantially impaired in "either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities."'" Ruiz Rivera, 521 F.3d at 83 (quoting Sullivan, 358 F.3d at 117 (quoting Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999))).

Although the complaint does not explicitly assert that PREPA had such a broad perception of Román's incapacity, the allegations are sufficient to embrace that contention. According to the complaint, PREPA removed Román from his position without any meaningful effort to offer him alternative positions appropriate for whatever limitations his employer attributed to him. Román alleges one attempted transfer, but his objections to it – based on

-13-

denial of food and travel allowance – suggest it was a temporary relocation rather than reassignment to a new position deemed more suitable for his abilities. In any event, given that the disability at issue is a mental condition rather than a discrete physical limitation, defendants' actions in removing Román and repeatedly demanding psychiatric evaluations permit the inference that defendants deemed him disqualified from a broad range of jobs. Cf. Quiles-Quiles v. Henderson, 439 F.3d 1, 6-7 (1st Cir. 2006) (concluding that supervisors' belief that plaintiff's mental impairment posed a safety risk to coworkers, "preclud[ing] him from holding most jobs in our economy," permitted jurors to find that employer regarded him as disabled); Watts v. United Parcel Serv., 378 F. App'x 520, 526 (6th Cir. 2010) (unpublished) ("When a defendant flatly bars a plaintiff from working at any job at the defendant's company, that is generally sufficient proof that the employer regards the plaintiff as disabled in the major life activity of working so as to preclude the defendant being awarded judgment as a matter of law.").

Román has thus made a sufficient showing of disability within the meaning of the ADA to survive defendants' motion to dismiss. His allegations easily satisfy the other two pleading prerequisites for his claim to proceed: that he could perform the essential functions of his job and that PREPA took adverse action against him, in whole or in part, because of his disability. We

-14-

see no alternative view of the allegations that is "'just as much in line' with innocent conduct" as with disability discrimination, Ocasio, 640 F.3d at 11 (quoting Twombly, 550 U.S. at 554); see also Iqbal, 129 S. Ct. at 1949, and Román has thus passed "the line between possibility and plausibility" in asserting a regarded-as violation of the ADA, Twombly, 550 U.S. at 557.

We hasten to add that we offer no view on the merits of his claim. The question at this stage of the case is not "the likelihood that a causal connection will prove out as fact." Sepúlveda-Villarini, 628 F.3d at 30. Rather, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Id.; see also Twombly, 550 U.S. at 563 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). Here, the pleaded facts support "[a] plausible but inconclusive inference" of discrimination based on disability, Sepúlveda-Villarini, 628 F.3d at 30, and Román is therefore entitled to proceed with his ADA claim.

## C. Individual Liability

Appellees Vélez and Renta argue that, regardless of our view of the sufficiency of the ADA allegations, they should be dismissed from the case because individuals are not subject to

-15-

liability under Title I of the statute. They acknowledge that neither we nor the Supreme Court has explicitly rejected individual liability under the ADA, but point out that a number of other circuits have taken that view.[11] See Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007); Walsh v. Nev. Dep't of Human Res., 471 F.3d 1033, 1037-38 (9th Cir. 2006); Fasano v. Fed. Reserve Bank of N.Y., 457 F.3d 274, 289 (3d Cir. 2006); Corr v. MTA Long Island Bus, 199 F.3d 1321, 1999 WL 980960, at *2 (2d Cir. Oct. 7, 1999) (unpublished); Butler v. City of Prairie Vill., 172 F.3d 736, 744 (10th Cir. 1999); EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1282 (7th Cir. 1995). In addition, Vélez and Renta assert that such a conclusion is the logical extension of our holding that Title VII, an analogous statute, does not support personal capacity claims. See Fantini v. Salem State Coll., 557 F.3d 22, 31 (1st Cir. 2009).

We agree that the logic of Fantini is compelling here. As other courts have observed, "[t]he statutory scheme and language of [Title I of] the ADA and Title VII are identical in many respects." Walsh, 471 F.3d at 1038; see also, e.g., AIC, 55 F.3d at 1279-80. Both statutes direct their prohibitions to

---

[11] As Vélez and Renta note, we previously declined to reach the issue while noting that other circuits, as well as district courts within this circuit, have held that individuals are not subject to suit under the ADA. See Acevedo López v. Police Dep't of P.R., 247 F.3d 26, 29 (1st Cir. 2001).

"employer[s],"[12] and the ADA's definition of employer mirrors Title VII's.  Under both, an employer is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such . . . person."  42 U.S.C. § 12111(5)(A) (ADA); see also id. at § 2000e(b) (Title VII).

In Fantini, we recognized that Title VII's exemption for small employers signified an intention not "'to burden small entities with the costs associated with litigating discrimination claims.'"  557 F.3d at 29 (quoting Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993)).  We quoted the Ninth Circuit's observation that "'[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.'"  Id. (quoting Miller, 991 F.2d at 587).  Hence, we accepted that the statutory reference to "any agent" in the definition of "employer" does not connote individual liability, but "'simply . . . establish[es] a limit on an employer's liability for its employees' actions.'"  Fantini, 557 F.3d at 30 (quoting Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998)); see also Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996)

---

[12] The ADA prohibits discriminatory conduct by a "covered entity," 42 U.S.C. § 12112(a), and provides that "[t]he term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee," id. at § 12111(2).  Title VII states, inter alia, that specified discriminatory practices are unlawful "for an employer."  42 U.S.C. § 2000e-2(a).

(noting that "the 'agent' language was included to ensure respondeat superior liability of the employer for the acts of its agents").

We also relied on precedent noting that changes to Title VII's remedial scheme enacted in 1991 – applicable to the ADA as well – bolstered the conclusion that individuals are not liable under the statutes. Fantini, 557 F.3d at 31; see 42 U.S.C. § 1981a. Previously, the ordinary remedies available under Title VII were limited to back pay and equitable relief, which "'"typically are only obtainable from an employing entity, not from a mere individual."'" Fantini, 557 F.3d at 31 (quoting Lissau, 159 F.3d at 181 (quoting AIC, 55 F.3d at 1281)). The 1991 amendments added compensatory and punitive damages calibrated to the size of the employer. The "sliding scale of liability," which ranges from a maximum of $50,000 for companies that employ up to one hundred workers and a maximum of $300,000 for companies that employ more than 500 employees, 42 U.S.C. § 1981a(b)(3), "does not stipulate an amount in cases where a plaintiff seeks to hold an individual supervisor liable." Lissau, 159 F.3d at 181. Thus, we concluded that neither the original remedial scheme nor the amendments contemplated individual liability. See Fantini, 557 F.3d at 30-31; see also AIC, 55 F.3d at 1281; Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1077 (3d Cir. 1996) (en banc) (noting that Congress's failure to state "the amount of damages, if any, that

would be payable by individuals . . . strongly suggests that [it] did not contemplate that such damages would be assessed against individuals who are not themselves the employing entity").

We see no basis for reaching a different outcome under Title I of the ADA. Indeed, given the parallel statutory language and the identical 1991 amendment to the statutes' remedial provisions, we think it apparent that Congress intended that these two employment discrimination provisions be treated uniformly. We thus agree with the virtually universal view that Title I of the ADA, like Title VII of the Civil Rights Act, "'addresses the conduct of employers only and does not impose liability on co-workers.'" Fantini, 557 F.3d at 31 (quoting Powell v. Yellow Book U.S.A., Inc., 445 F.3d 1074, 1079 (8th Cir. 2006)). Hence, the claims against Vélez and Renta were properly dismissed.

## III.

For the reasons we have discussed, we affirm the dismissal of Román's claims under Title VII and 42 U.S.C. § 1983, and we also affirm dismissal of the ADA claims against appellees Vélez and Renta. Román has waived any challenge to the dismissal of his hostile environment claim. We vacate the portion of the district court's order dismissing the Title I ADA claim against PREPA. Likewise, we vacate the dismissal of the pendent Commonwealth claims, which the district court declined to hear in the absence of any surviving federal claims.

So ordered. Costs to appellant.