# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1794

ROBERT TOCKES,

*Plaintiff-Appellant,*

*v.*

AIR-LAND TRANSPORT SERVICES, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-1405—**Joe Billy McDade**, *Chief Judge.*

_____

ARGUED AUGUST 6, 2003—DECIDED SEPTEMBER 9, 2003

_____


Before BAUER, POSNER, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.*  Robert Tockes' suit for disability discrimination by his former employer was dismissed on summary judgment. In 1988 Tockes, who was then in the Army, had injured his right hand. The nature of the injury is unclear. The only description comes from Tockes, who describes it as "a crushing injury" when his hand was caught between two vehicles, resulting in "permanent restrictions" on the use of his hand. He does not say what those restrictions are, but the injury was serious enough

to induce the Army to award him a 20 percent disability pension. The injury clearly was not disabling within the meaning of the Americans with Disabilities Act, however, as it did not prevent him from working at jobs that require two hands, such as driving a truck that has not been adapted for a disabled person. And indeed he was hired by the defendant as a flatbed-truck driver in 2001 after informing the defendant of his injury and being put through a full road test and physical examination. One month later he was fired, after the defendant discovered that he had used only one hand in fastening a load to the bed of the truck, in violation of the company's safety rules; it is extremely dangerous to fasten a load on a flatbed truck insecurely. Oddly, there is no indication whether it was Tockes' "good," his left, hand that he was using to fasten the load.

He contends, and for purposes of the appeal we accept, that when he was fired the defendant told him the following three things: he was being fired because of his disability, he was crippled, and the company was at fault for having hired a handicapped person. He argues that these statements show that the company violated the provision of the ADA that creates a remedy for a worker who suffers an adverse personnel action because, though he is not disabled within the meaning of the Act, his employer thinks he is. 42 U.S.C. § 12102(2)(C); *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489-90 (1999); *Dyke v. O'Neal Steel, Inc.*, 327 F.3d 628, 632-33 (7th Cir. 2003). The provision penalizes false beliefs about disability in an effort to dispel them, on the theory that such beliefs work to the detriment of the (truly) disabled. *Sutton v. United Airlines, Inc., supra*, 527 U.S. at 489-90; *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 573 (7th Cir. 2001). What defeats Tockes' suit is that there is no evidence that his employer harbored the erroneous belief that he was disabled *within the meaning of the Act.* (Obviously it knew he

had a disability.) For one thing, had it thought that, it would have been unlikely to hire him to drive a flatbed truck, at least without altering the controls so that he would not have to operate the manual gearshift with his damaged right hand. A "false belief" case is more plausible when a worker who was fine when he was hired experiences some illness or injury that his employer mistakenly considers disabling.

It is true that if Tockes is believed, the defendant called him "crippled" and "disabled" and "handicapped," but all are words with a range of meanings, and do not without more connote a belief that the individual is under the protection of the ADA. The Army thought Tockes 20 percent disabled; obviously this does not mean that the Army thought he was so far disabled as to fall within the restrictive meaning that the ADA assigns to the term. To be disabled within that meaning, Tockes would have had to be unable to drive without some accommodation to his disability. Unless the employer mistakenly believes that an employee has a disability grave enough to be so classified under the ADA, the employer's acting on the mistaken belief does not violate the statute. *Wright v. Illinois Dep't of Corrections*, 204 F.3d 727, 731-32 (7th Cir. 2000); *Bailey v. Georgia-Pacific Co.*, 306 F.3d 1162, 1169-70 (1st Cir. 2002).

Allowing this suit to go forward would merely discourage employers from giving a chance for employment to workers who have some degree of disability. Loading and driving a flatbed truck is strenuous work, and so a partially disabled person would be bound to have an above-average probability of failing at it. If the probability materializes, as it may or may not have done in this case (remember that we don't know which hand Tockes used in fastening the load), and the company blames both itself and the partial disability for the failure, there is no reason to ascribe a discriminatory motive to the employer.

AFFIRMED.

A true Copy:

    Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*