**Richard V. ROBERTS, Plaintiff,**

v.

**DIMENSION AVIATION, Defendant.**

**No. CIV 00–2041PHXJAT.**

United States District Court,
D. Arizona.

May 24, 2004.

---

James N. Foster, Jr., Mary Carter Martin, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO, for Defendant.

Rosval A. Patterson, Patterson & Associates, Phoenix, AZ, for Plaintiff.

## ORDER RE MOTION FOR SUMMARY JUDGMENT

TEILBORG, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment on Plaintiff's claims that he was discriminated against by Defendant because of his alleged learning and vision disabilities (Doc. # 52). Plaintiff opposed the motion (Doc. # 58) and Defendant replied.[1] Summary judgment is appropriate when "the plead- ings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R.Civ.P. 56(c). Thus, summary judgment is mandated, "... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505.

## FACTUAL BACKGROUND

Plaintiff filed suit alleging that he worked for Dimension Aviation from No-

---

1. Docket # 58 is Plaintiff's amended response to Defendant's motion. Plaintiff sought leave to file the amended response and Defendant did not object. Plaintiff's motion for leave to amend is hereby granted.

vember 1997 through November 1998 and that during that time period, he was "regarded to or perceived as having an impairment." (Doc. # 1 at ¶ 5). Plaintiff claims that his coworkers referred to him as Del, short for Deliverance, called him stupid, retarded and fag. (Doc. # 58 at 13). Plaintiff also claims that he was called walleye and one eye, in reference to his Strabismus, or lazy eye. *Id.* In addition, one of his supervisors drew a picture of Plaintiff playing Dominos, with stars flying around his head (indicating that Plaintiff is confused) and saying "It was my partners fault" (Doc. # 58 at Exh. 9). According to Plaintiff, the picture was hung on a bulletin board for two months. (Doc. # 1 at ¶ 13). Dan Ferry, a Dimension Aviation supervisor, testified at deposition that he drew the picture because Plaintiff was a horrible Dominos player and always blamed loss on his partner (Doc. # 52 at 13–14).

## DISCUSSION

For a plaintiff to establish a prima facie case of discrimination under the ADA, the plaintiff must show that he: "(1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of [his] disability." *Snead v. Metropolitan Property & Casualty Co.,* 237 F.3d 1080, 1087 (9th Cir.2001). One way that a plaintiff can prove he has a disability within the meaning of the ADA is to show that he as "a physical or mental impairment that substantially limits one or more of [his] major life activities." *Thornton v. McClatchy Newspapers, Inc.,* 261 F.3d 789, 794 (9th Cir.2001)(clarified on other grounds 292 F.3d 1045(9th Cir.2002))(internal quotations and citations omitted); 42 U.S.C. § 12102(2)(A). A person is also disabled if he is "regarded as having such an impairment." 42 U.S.C. § 12102(2)(C).

Plaintiff here claims that he is disabled and that he was regarded as having an impairment. Plaintiff claims that he was wrongfully discharged due to his disability and that he was harassed because of his disability. (Doc. # 1). The Ninth Circuit has not yet held that a hostile work environment/harassment claim is actionable under the ADA.[2] However, several other circuits have recognized such a cause of action because of the similarity between the language of the ADA and Title VII. Each prohibits discrimination with regard to "other terms, conditions, and privileges of employment" and courts have concluded that because such language is the basis for a hostile work environment claim under Title VII, the same must be true under the ADA. *See Fox v. General Motors Corporation,* 247 F.3d 169, 175 (4th Cir.2001); *Flowers v. Southern Regional Physician Services, Inc.,* 247 F.3d 229, 233 (5th Cir. 2001); *Shaver v. Independent Stave Company,* 350 F.3d 716, 719–20 (8th Cir.2003).

The Court assumes here, without so holding, that a cause of action for harassment exists under the ADA. To succeed on a claim of disability-based harassment under the ADA, Plaintiff must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcomed harassment; (3) harassment complained of was based on his disability or disabilities; (4) harassment complained of affected term, condition or privilege of employment; and (5) employer knew or should have known of harassment and failed to take prompt, remedial action. *Flowers,* 247 F.3d at 235–36. Whether Plaintiff here claims that he suffered an adverse employment action, namely discharge, because of his disability or that he was harassed because of his disability, he must

---

2. *See Brown v. City of Tucson,* 336 F.3d 1181, 1190 (9th Cir.2003)(noting that "[o]ur court has not yet held that such a claim exists, let alone what its source in the statute might be. We decline to do so here.")

prove that he was disabled or perceived as disabled within the meaning of the ADA. Because he has failed to meet that burden, the Court finds summary judgment appropriate.[3]

### A. Plaintiff's alleged disabilities.

#### 1. Plaintiff's alleged learning disability.

Plaintiff claims to suffer from a learning disability that substantially limits the major life activity of learning. As support for this contention, Plaintiff relies on his high school transcript and a letter from a school administrator that states that although Plaintiff's specific educational records have been destroyed, Plaintiff took special education classes structured for students with Specific Learning Disabilities as defined by Title 15, Arizona Revised Statutes and the Arizona Administrative Code [Doc. # 58, Ex. 5]. Defendant urges the Court not to consider the unsigned, unsworn letter because it is hearsay. The Court will consider it, however, because it is inappropriate to focus on the admissibility of the evidence's form at the summary judgment stage. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.2003). The focus at this stage in the proceeding is the admissibility of its contents. *Id.*

However, even considering the transcript and the letter, the Court does not find that Plaintiff provided sufficient evidence to create a genuine issue of fact regarding whether he has a learning disability that substantially limits the major life activity of learning. The Supreme Court has stated that the terms "major" and "substantial" must be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Manufacturing, Kentucky Inc. v.*

*Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). In addition to this exacting standard, section 12102(2)(A)'s definition of disability "is phrased in the present tense." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 508 (7th Cir.1998). It is therefore necessary for Plaintiff to prove that he *currently* suffers from a learning disability. In *Davidson*, plaintiff claimed to suffer from Attention Deficit Disorder and provided evidence that the ADD had limited her ability to learn in high school, college and graduate school, but that there was "little or no evidence in the record establishing that ADD presently inhibits her capacity to learn." *Id.*

In this case, Plaintiff's high school records from more than 20 years ago do little to establish that he *currently* suffers from a learning disability. Although Plaintiff testified at deposition that he sometimes has trouble reading and understanding words, he also testified that despite his alleged learning disability, he was able to read blueprints, determine how to do a job, perform the job, ask questions when he needed help, understand the instructions given to him and follow those instructions (Doc. # 54 at ¶¶ 37–38, 129–30). Plaintiff's reliance on *Zukle v. Regents of the University of California*, 166 F.3d 1041 (9th Cir. 1999) is misplaced. Not only was disability not the issue in that case but Zukle was tested for and found to have a disability the same year she sought accommodations from the university. *Id.* at 1043. She did not rely on 20 year old high school records to support her claim of disability and therefore satisfied the requirement that she *currently* suffer from a disability. Plaintiff has provided nothing in the past 20 years showing that he currently suffers

---

3. Because the Court finds that Plaintiff has failed to establish a genuine issue of material fact regarding whether he is disabled or was perceived as disabled, the Court declines to address whether Defendant employed Plaintiff.

from a learning disability. As one court observed, "[b]eing 'slow' is not necessarily synonymous with a substantially limited major life activity." Avina v. Dallas Independent School District, 1999 WL 288673 *4 (N.D.Tex.1999). Plaintiff has failed to establish a genuine issue of material fact regarding a learning disability.

### 2. Plaintiff's alleged visual impairment.

■ Plaintiff claims to have suffered from Strabismus, commonly known as "lazy-eye", a condition which causes his left eye to roll to the left, causing him to look disfigured. Although not totally clear from Plaintiff's opposition papers, it appears that Plaintiff is claiming that the Strabismus substantially limits the major life activity of seeing. However, even with the Strabismus (which has now been corrected) Plaintiff's vision was measured at 20/25, better vision than many nearsighted people achieve with corrective lenses. Plaintiff testified that his Strabismus has little or no effect on his vision. (Doc. # 54 at ¶¶ 121–22). Plaintiff has a valid driver's license and can see well enough to read and otherwise go about his daily activities. Id. In addition, Plaintiff qualified for military service. Under such circumstances, a reasonable jury could not find that Plaintiff is substantially limited in the major life activity of seeing. See E.E.O.C. v. United Parcel Service, 306 F.3d 794, 803 (9th Cir.2002)(employees with no vision in one eye and near-field impairment in other were not disabled under the ADA because the impairment did not substantially limit the major life activity of seeing as witnessed by fact that both employees drove, read, used tools and played sports).

### B. Regarded as disabled.

■ Plaintiff claims that he was perceived as disabled. As with real impairments "a perceived impairment must be substantially limiting and significant." Thompson v. Holy Family Hospital, 121 F.3d 537, 541 (9th Cir.1997)(internal quotations omitted). Plaintiff claims that his coworkers referred to him as Del, short for Deliverance, called him stupid, retarded and fag. (Doc. # 58 at 13). Plaintiff also claims that he was called walleye and one eye, in reference to his Strabismus, or lazy eye. Id. These insults are insufficient to establish that Plaintiff was regarded as disabled. For example, in Costello v. Mitchell Public School District 79, 266 F.3d 916, 919 (8th Cir.2001), plaintiff, a high school student, testified at deposition that her band teacher daily called her "retarded," "stupid," and "dumb," and told her that she could no longer play in the band because "she was too stupid and that he did not have to teach students like that and that he would not." Plaintiff claimed that she was perceived as disabled, but the court found that the name-calling by the band teacher was "insufficient to raise a genuine issue of material fact on the matter." Id. at 924. See also Tockes v. Air–Land Transp. Svc. Inc., 343 F.3d 895 (7th Cir.2003)(employer's statements that employee was "crippled," "handicapped" and "disabled" were insufficient to establish a perception of disability.)

The Court is unsure of the significance of Del as a nickname. Plaintiff has not explained in his opposition papers how that nickname was in reference to his alleged disability and the Court is not required to scour the entire record for evidence establishing a genuine issue of fact. See Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028–29 (9th Cir.2001).

There is also the unflattering picture that Dan Ferry drew of Plaintiff and hung on a bulletin board. While the drawing of Plaintiff was certainly not nice, it does not lead to the conclusion that Plaintiff was regarded as disabled. If anything, Plaintiff was perceived as a poor Dominos player, clearly not actionable under the ADA.

## C. The EEOC cause determination.

Plaintiff puts great weight on the fact that the EEOC found cause for Plaintiff to sue (Doc. # 58 at Ex. 8). However, an EEOC cause determination is not sufficient to create a genuine issue of material fact. *Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1283. Although such letters are admissible into evidence, they are not "homogeneous products; they vary greatly in quality and factual detail." *Id.* Here, the EEOC concluded that plaintiff was disabled. However, the letter provides no specific facts underlying that decision. As in *Coleman*, because "it is impossible from this letter to know what facts the EEOC considered and how it analyzed them" the letter has little probative value. *Id.*

ACCORDINGLY,

IT IS ORDERED, granting Plaintiff's motion to amend his response to Defendant's motion for summary judgment (Doc. # 58); and

IT IS FURTHER ORDERED, granting Defendant's motion for summary judgment (Doc. # 52).